United States District Court
Southern District of Texas
**ENTERED**
July 15, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REPAIRIFY, INC. d/b/a ASTECH, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-1370 |
| AIRPRO DIAGNOSTICS, LLC, | § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

Among other pending motions is Defendant AirPro Diagnostics, LLC's Motion to Dismiss, and in the Alternative, Motion to Transfer Venue (Document No. 14).[1] After carefully considering the motion, response, reply, and applicable law, the Court concludes for the reasons that follow that this case should be dismissed for lack of personal jurisdiction.

I. Background

Plaintiff Repairify, Inc. d/b/a asTech and Defendant AirPro Diagnostics, LLC compete with each other to sell computerized remote diagnostic devices to automobile repair shops and service centers. These devices connect to computer components within an

---

[1] Defendant's motion at Document No. 16 to stay proceedings pending the Court's resolution of the motion to dismiss or transfer is DENIED as moot.

automobile and collect data therefrom, including trouble codes when a component fails or is damaged, allowing the user to diagnose problems with the vehicle. In addition to selling their devices, both parties also provide diagnostic services to their customers, remotely analyzing the data collected and transmitted by the customer using the device. In this suit, Plaintiff alleges that Defendant's advertisements make false and defamatory statements comparing the parties' products and services.

Plaintiff is a Delaware corporation that relocated its headquarters in 2015 from Florida to Plano, Texas, with a branch office in Houston.[2] Plaintiff's predecessor, the Collision Diagnostic Services ("CDS") business of AES Technologies, LLC ("AES"), marketed and sold a product called "asTech" that performed remote scanning of automobile computer modules.[3] According to Plaintiff, the first-generation asTech device suffered from "major deficiencies" including "significant lack of coverage, missing communication on the vehicle's on-board diagnostic system ('OBD II') port, inability to communicate with the medium speed BUS and most importantly the inability to deal effectively with internet latency issues."[4] The CDS business ultimately was unsuccessful and

---

[2] Document No. 1 ¶¶ 6, 13 (Orig. Compl.); Document No. 14 at 16-17.

[3] Document No. 1 ¶ 14.

[4] Id. ¶ 18.

2

filed bankruptcy in 2015.[5] Plaintiff purchased out of bankruptcy CDS's operating assets, including all of the rights to the first generation asTech device, which device it immediately stopped selling.[6]

Plaintiff then spent a full year and millions of dollars addressing the product's deficiencies and developing a second-generation asTech device, which it describes as "not an enhanced version of the First Gen asTech device, but rather a completely new product, built from the ground up."[7] Plaintiff introduced the new asTech device, which is produced in Plano, Texas, to the market in July 2016.[8] Plaintiff initially marketed the new device as the "asTech 2," but after its sales base grew to include many customers with no exposure to the original product, Plaintiff began marketing the new product exclusively as the "asTech."[9] In December 2016, Plaintiff stopped servicing the first-generation device, which it had stopped selling in July 2015.[10]

Meanwhile, in April 2016, Lonnie Margol founded Defendant AirPro Diagnostics, LLC in Jacksonville, Florida, to compete with

---

[5] Id. ¶ 16.

[6] Id. ¶¶ 17-18.

[7] Id. ¶ 19.

[8] Id. ¶¶ 19-20.

[9] Id. ¶ 21.

[10] Id.

Plaintiff nationwide by offering Defendant's "AirPro" device and accompanying remote automobile scanning services.[11] Margol had been the chief executive officer of AES, overseeing the CDS business, from 2013 to 2015, but his employment was terminated before Plaintiff acquired AES's assets.[12] Margol also recruited Chuck Olson, a former AES employee who had stayed on briefly as an employee of Plaintiff after AES's bankruptcy.[13]

In August 2016, just four months after Defendant entered the market, Plaintiff sued Defendant and Olson in the United States District Court for the Middle District of Florida, challenging Defendant's hiring of Olson and alleging that Defendant was making false claims about Plaintiff's product in its advertisements. Repairify, Inc. v. AirPro Diagnostics, LLC, Case 3:16-cv-984-J-MMH-JRK (M.D. Fla. filed Aug. 2, 2016). The parties settled that case

---

[11] Id. ¶ 31; Document No. 14-2 ¶¶ 3-5, 12 (Aff. of Lonnie E. Margol). The parties offer competing affidavits and allegations concerning the differences and respective functions of their products, with each side claiming that the other's product is significantly inferior. These disputes go to the merits of Plaintiff's claims and are immaterial to the issues of personal jurisdiction and venue.

[12] Document No. 1 ¶ 30. Plaintiff confusingly alleges at page four of Plaintiff's Original Complaint that the CDS business of AES went bankrupt out of which bankruptcy Plaintiff bought CDS's assets, and then at page eight Plaintiff alleges that AES went bankrupt out of which bankruptcy Plaintiff bought AES's assets. Presumably this was one bankruptcy proceeding out of which Plaintiff acquired the asTech assets.

[13] Id. ¶ 32.

and the court dismissed Plaintiff's claims with prejudice in June 2017. Id., ECF Nos. 87, 89.

Less than two years later, Plaintiff filed this suit alleging that Defendant "has once again aggressively targeted asTech and adopted predatory tactics in its advertising and marketing."[14] Specifically, Plaintiff alleges that (1) Defendant paid to have Google redirect internet users who searched for "asTech" to Defendant's website; (2) Defendant posted on its website a false and misleading chart comparing the asTech and AirPro products and suggesting that Defendant's founders have insider knowledge of the asTech device even though they were only familiar with the obsolete first-generation device; (3) Defendant's website makes numerous false and misleading statements suggesting that asTech devices are unreliable and inferior; and (4) Defendant distributed to many of the parties' customers and other industry participants a copy of the misrepresentations on Defendant's website, a cease and desist letter from Plaintiff, Defendant's response thereto, and a cover letter adding additional misstatements about Plaintiff's product.[15] Plaintiff alleges claims for false advertising in violation of the Lanham Act, business disparagement, intentional interference with prospective business relationships and contracts, and defamation.[16]

---

[14] Id. ¶ 36.

[15] Id. ¶¶ 37-46.

[16] Id. ¶¶ 51-92.

In addition to seeking actual and exemplary damages, Plaintiff moves preliminarily to enjoin Defendant from making various allegedly false and misleading statements.[17] Defendant moves to dismiss for lack of personal jurisdiction and improper venue, and alternatively, to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404.[18]

II. Motion to Dismiss for Lack of Personal Jurisdiction

A.  Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. See Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that

---

[17] Document No. 11.

[18] Document No. 14.

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. *See* Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant whose contacts with the forum are so substantial, systematic and continuous that the defendant is essentially at home in the state. *See* Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (2011).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000). Proof by a preponderance of the evidence is not required. Johnston v. Multidata Systems Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989).

Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor. Alpine View, 205 F.3d at 215.

B. Discussion

Plaintiff makes no cogent argument that Defendant is subject to general personal jurisdiction in Texas. If Plaintiff intends to urge such a finding, it has not established a *prima facie* case that Defendant is essentially at home in Texas. Defendant's uncontroverted evidence is that it is a Florida limited liability company whose principal place of business is and always has been in Jacksonville, Florida; that all of its members are residents of Florida; that its physical office and the majority of its staff are located in Florida; that it has only a single employee in Texas; that its customers are located throughout the United States and Canada, with only about two percent located in Texas; and that its website is maintained and updated in Jacksonville, Florida.[19] The facts make clear that Defendant is not "at home" in Texas. *See* Goodyear, 131 S. Ct. at 2853-54 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); Daimler AG

---

[19] Document No. 14-2 ¶¶ 4, 8-15, 19.

v. Bauman, 134 S. Ct. 746, 760 (2014) ("Goodyear made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. . . . Plaintiffs would have us look beyond the exemplar bases Goodyear identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' That formulation, we hold, is unacceptably grasping.") (record citation omitted). In short, Plaintiff has failed to show that Defendant is subject to general personal jurisdiction in Texas.

For specific jurisdiction, on which Plaintiff focuses, the Fifth Circuit employs a three-step analysis, determining

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 433 (5th Cir. 2014) (citation omitted). The plaintiff bears the burden of establishing the first two prongs, after which the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable. Id.

Plaintiff argues that Defendant is subject to personal jurisdiction in Texas because (1) its website targets and disparages Plaintiff, a Texas company, (2) Defendant emailed a copy of its disparaging statements to Plaintiff's customers in Texas, (3) Defendant's Vice President of Sales and Marketing is located in Texas, and (4) Defendant has customers in Texas, regularly does business in Texas, and is actively hiring additional employees in Texas.[20] Defendant disputes the truth of some of these assertions and argues that its contacts to Texas are unrelated to Plaintiff's claims.

If Defendant in fact emailed its allegedly defamatory statements about Plaintiff to Plaintiff's customers *in Texas*, that would establish specific jurisdiction in this case. *See* Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."). However, Defendant's uncontroverted evidence is that although it distributed the materials about which Plaintiff complains (and which Defendant maintains are truthful),

---

[20] Document No. 22 at 5-13. "In this circuit, specific personal jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009) (quoting Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006)). The parties do not make separate arguments relating to Plaintiff's separate claims, which appear all to arise from the same allegations.

"none of the individuals or entities that received the information were located in the State of Texas or based in the State of Texas."[21] Plaintiff produces evidence that "one of its customers *with Texas locations*, Asbury Automotive Group," informed Plaintiff that it had received an email copy of the offending materials.[22] Plaintiff's evidence on its face does not establish or even suggest that Defendant sent the email *to Texas*. Indeed, as Defendant establishes in its reply, Asbury Automotive Group is a Delaware company with its principal executive office in Georgia, and Defendant sent its correspondence to Asbury's regional manager in Atlanta, Georgia and not to any Asbury affiliate in Texas.[23] The uncontroverted evidence fails to show that Defendant sent the allegedly defamatory materials to any person or entity in Texas.

Nor can specific jurisdiction be established in Texas based on the Houston residence of Defendant's Vice President of Sales and Marketing, Frank LaViola. Plaintiff infers that based on his title, LaViola must be responsible for the allegedly defamatory statements in Defendant's advertising campaign (which Defendant calls the "Truth Campaign"), but Defendant produces uncontroverted

---

[21] Document No. 14-2 ¶ 22.

[22] Document No. 22-2 ¶ 9 (Decl. of Doug Kelly) (emphasis added).

[23] Document No. 23-2 ¶ 5 (Aff. of Lonnie E. Margol); Document No. 23-4 ¶ 4 (Decl. of Brett Chisum); Document No. 23-6 (Asbury Automotive Group's Form 10-K).

evidence that LaViola was hired in January 2019 and "was not involved in the planning, development, or initial execution of the Truth Campaign," was not "involved in any aspect of creating the Truth Campaign," does not control the content of Defendant's website, and "did not direct, order or authorize any of the posts complained of in AsTech's Complaint."[24] Given this uncontroverted proof regarding the facts that underlie Plaintiff's claims, LaViola's mere presence in Texas does not support Plaintiff's assertion of specific personal jurisdiction. *See* Revell v. Lidov, 317 F.3d 467, 472 (5th Cir. 2002) ("For specific jurisdiction we look only to the contact out of which the cause of action arises[.]") (citing Lewis, 252 F.3d at 358); Monkton, 768 F.3d at 433 (requiring showing that "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts").

Likewise, while it is undisputed that two percent of Defendant's customers are in Texas and that Defendant briefly advertised to hire additional employees in Texas,[25] there is no allegation or evidence that these minimum contacts have any relation to the allegedly false statements that form the basis of Plaintiff's claims, so as to support a *prima facie* case of specific

---

[24] Document No. 23-3 ¶¶ 7-11 (Aff. of Frank LaViola).

[25] The uncontroverted evidence is that although Defendant has advertised openings in Texas, its only employee who resides in Texas is LaViola, and its potential expansion into Texas has not proceeded beyond the initial planning stages. Document No. 23-2 ¶¶ 9, 11.

12

personal jurisdiction. ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 500 (5th Cir. 2012) ("But in addition to minimum contacts, specific jurisdiction only obtains when a plaintiff's claims arise out of or relate to the defendant's purposeful contacts with the forum. Or, as we have put it, the plaintiff's cause of action must arise out of or result from the defendant's forum-related contacts. This is what we find lacking. There is little nexus between the defendants' contacts with Mississippi and the plaintiffs' contract and trademark claims.") (internal quotation marks, alterations, and citations omitted); see also Monkton, 768 F.3d at 433; Revell, 317 F.3d at 472.

Plaintiff also argues that because Defendant's allegedly false statements are directed at Plaintiff, a Texas company, and the harm from those statements has been felt disproportionately in Texas, the statements on Defendant's website and in its emails should by their very nature be construed as directed at Texas. Plaintiff does not, however, allege or produce any evidence that any of Defendant's statements have referenced Texas or targeted a Texas-specific audience. See Revell, 317 F.3d at 474 ("It signifies that there is no reference to Texas in the article or any reliance on Texas sources. These facts weigh heavily against finding the requisite minimum contacts in this case."); Alliantgroup, L.P. v. Feingold, No. CIV.A. H-12-1429, 2012 WL 4485730, at *3 (S.D. Tex. Sept. 26, 2012) (to support specific personal jurisdiction based on

13

allegedly defamatory postings on a website, "the alleged defamatory material must be directed at a Texas audience as opposed to simply being made available to Texas residents in the same way as anyone else with internet access") (citing Revell, 317 F.3d at 474-75). In the absence of any statements by Defendant about or expressly directed at Texas, the mere fact that Plaintiff is a citizen of Texas is insufficient to establish specific jurisdiction under the "effects test," particularly where both parties compete nationwide and not only--or even primarily--in Texas. See United Servs. Auto. Ass'n v. New Day Fin., LLC, No. SA-17-CV-759-OLG, 2018 WL 1899807, at *6 (W.D. Tex. Mar. 8, 2018) (rejecting specific jurisdiction under the effects test based on content of website where "USAA has simply failed to show NewDay expressly aimed its conduct at Texas. . . . Instead, Texas is merely the location where USAA experienced the alleged injury. The alleged injury to USAA would have been the same regardless of where USAA's headquarters was located."), *report and recommendation adopted*, No. SA-17-CA-759-OG, 2018 WL 1905113 (W.D. Tex. Mar. 27, 2018).

Finally, Plaintiff maintains that Defendant is subject to specific jurisdiction because its website includes an application, called "ORION," that Defendant's customers use to transmit and receive data from the AirPro devices, and also has a "Contact Us" webpage that allows customers and potential customers to enter their contact information and other relevant information and

14

transmit it to Defendant.[26] Plaintiff argues that these features make Defendant's website active, or at least interactive, under the Zippo test used by the Fifth Circuit.

The Zippo test, first articulated in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), provides a framework for determining when a defendant's website subjects it to personal jurisdiction in a forum state:

> The Zippo decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet. . . ." In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." We find that the reasoning of Zippo is persuasive and adopt it in this Circuit.

Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999) (citations omitted).

Although Defendant's ORION application and "Contact Us" webpage have interactive features under the Zippo test, Plaintiff's

---

[26] Document No. 22 at 6-9.

claims do not arise from either of those portions of Defendant's website. Indeed, Plaintiff does not suggest that there is anything false, misleading, or otherwise improper about the interactive portions of Defendant's website. Where specific jurisdiction is invoked, the court should consider only the portions of the website from which the plaintiff's claims arise, as the Fifth Circuit did in Revell. See Revell, 317 F.3d at 472 ("For specific jurisdiction we look only to the contact out of which the cause of action arises--in this case the maintenance of the internet bulletin board. Since this defamation action does not arise out of the solicitation of subscriptions or applications by Columbia, those portions of the website need not be considered.") (citation omitted).

The only content on Defendant's website that gives rise to Plaintiff's claims is Defendant's "Truth Campaign," consisting of static information posted by Defendant comparing the parties' products. Defendant produces uncontroverted evidence--and indeed Plaintiff does not argue to the contrary--that the portions of the website containing the statements that Plaintiff identifies as false and misleading are not interactive and do not allow for the exchange of information.[27] As such, they qualify as passive under

---

[27] Document No. 23-2 ¶ 10 ("The portions of AirPro's website that contain the information that asTech alleges to be false and misleading are not interactive. Those portions do not allow for the exchange of information, even with existing customers.").

the Zippo test and therefore provide no basis for the assertion of specific personal jurisdiction. Mink, 190 F.3d at 336.

Because Plaintiff has not met its burden to make a *prima facie* showing that any of its causes of action arise out of or result from Defendant's minimum contacts with Texas, Defendant is entitled to dismissal for lack of personal jurisdiction.[28]

### III. Order

For the foregoing reasons, it is

ORDERED that Defendant AirPro Diagnostics, LLC's Motion to Dismiss (Document No. 14) is GRANTED and Plaintiff's claims are DISMISSED without prejudice for lack of personal jurisdiction.

---

[28] Plaintiff briefly makes an alternative request to engage in limited jurisdictional discovery. "As the party opposing dismissal and requesting discovery, [Plaintiff] bear[s] the burden of demonstrating the necessity of discovery." Monkton, 768 F.3d at 434 (citation omitted). Plaintiff does not state what additional evidence it reasonably expects to find if discovery were allowed. The parties, which know each other well and have engaged in previous litigation against each other, have filed full briefs including their verified evidence related to Defendant's contacts with Texas alleged in Plaintiff's Complaint. As observed, the evidence submitted fails to establish that Defendant is subject to personal jurisdiction in Texas. Without stating what other facts pertinent to jurisdiction are expected to be discovered and a plausible basis for that expectation, Plaintiff fails to carry its burden to show that additional jurisdictional discovery is warranted. *See, e.g.*, Evergreen Media Holdings, LLC v. Safran Co., 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014) (finding no personal jurisdiction and denying motion for jurisdictional discovery where plaintiffs "have not described what facts they expect to discover and how that information would support jurisdiction").

A Final Judgment will be entered separately.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 15TH day of July, 2019.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE